UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH STINEBAUGH, SAMUEL OSTRONIK and KIMBERLY SCHWARTZ, as husband and wife and the marital community comprised thereof; THOMAS WHITE, HARVEY ALLEN HILL and TAMI "T.J." HILL, as husband and wife and the marital community comprised thereof; KATIE CRIDER and TRACI HOFFMAN, | NO.  CV-07-5019-LRS |
| Plaintiffs, | ORDER |
| -vs- | |
| COUNTY OF WALLA WALLA; COMMISSIONER GREGG C. LONEY; COMMISSIONER DAVID G. CAREY; COMMISSIONER GREGORY A. TOMPKINS; LON TURNER and CINDY TURNER, as husband and wife and the marital community composed thereof; PHIL MERRELL, DICK WILLIAMS; and JAY WINTER, | |
| Defendants. | |

**I.    INTRODUCTION**

BEFORE THE COURT is Defendants County of Walla Walla, Commissioner Gregg Loney, Commissioner David Carey, Commissioner Gregory Tompkins,

ORDER - 1

Phil Merrell, Dick Williams and Jay Winter's ("County Defendants") Motion for Summary Judgment, Ct. Rec. 103, filed July 25, 2008; Defendant Lon and Cindy Turner's (Defendant Turners) Motion for Summary Judgment, Ct. Rec. 96, filed July 25, 2008; Defendants' Motion to Exclude Testimony of Expert Riett Brown Jacks, Ct. Rec. 42, filed July 7, 2008; Plaintiffs' Motion to Expedite Hearing on Plaintiffs' Motion to Strike, Ct. Rec. 213, filed September 11, 2008; and Plaintiffs' Motion to Strike Additional Evidence Filed Jointly by Defendants on September 11, 2008, Ct. Rec. 209. A hearing was held on September 11, 2008 in Yakima, Washington. Plaintiffs were represented by Janelle M. Carman; the County Defendants were represented by Patricia Buchanan and Sarah Mack; Defendant Lon and Cindy Turner were represented by Heather Yakely and Hugh Lackie.

Plaintiffs have indicated that they have withdrawn the defamation claims, the Fourteenth Amendment claims dealing with plaintiffs' reputations, and the breach of contract claims. Plaintiffs also indicate their intent to withdraw the witness Riett Brown Jacks, who is the subject of Defendants' Motion to Strike.

II.  **FACTUAL BACKGROUND**

The parties recount different versions of the events that took place in the Walla Walla County Public Works Department.  The court summarizes the aspects of each version relevant to Defendants' motions.[1]

---

[1]Unless otherwise noted, all facts alleged in this section (pgs. 3-4 herein) are taken from Defendants' Statement of Material Facts, Ct. Rec. 104 and Plaintiffs' Statement of Additional Material Facts, Ct. Rec. 180.

Plaintiffs, Joseph Stinebaugh, Samuel Ostronik, Thomas White, and Harvey Allen Hill, are current employees of the Walla Walla County Public Works Department. Plaintiff Katie Crider was a temporary summer employee for the Walla Walla County Public Works Department between June 2005 and August 2005. Plaintiff Traci Hoffman was employed at the Walla Walla County Public Works Department from 1996 until she resigned on February 16, 2007. Plaintiffs are joined in this lawsuit by Mr. Ostronik's wife, Kimberly Schwartz, and Mr. Hill's wife, Tami "T.J." Hill.

Defendant Walla Walla County is a municipal entity within the State of Washington. At the time period at issue in this matter, the Walla Walla County Public Works Department was divided into Districts, one of which includes the District 1 road crew. Defendant Phil Merrell was employed with the Walla Walla County Public Works Department between May 1998 and May 2006. Defendant Dick Williams was employed with the Walla Walla County Works Department between January 28, 1980 and February 1, 2007. Defendant Jay Winter is the current Risk Manager for Walla Walla County. Defendants David G. Carey, Gregg C. Loney and Gregory A. Tompkins currently serve as the Walla Walla County Commissioners.

Defendant Lon Turner was an employee of the Walla Walla County Public Works Department between March 6, 1976 and February 2007. During that time he held many positions, including Road Maintenance Foreman, Sign Maintenance Foreman, Flagger, Paint Striper Supervisor/Sign Maintenance Worker, Paint Striper Operator, Tandem and Single Axle Truck Driver, Athey Loader, Bushwacker/Mower, Dozer Operator and Front End

Loader.

The commissioners supervised Defendant Jay Winter. Jay Winter had the combined position of director of personnel and risk management officer. Winter and Phil Merrell met regularly regarding issues raised with the management team in the Public Works Department ("PWD"). Merrell spoke with Williams regularly on personnel issues. Between 1998 and 2006, the commissioners also supervised Defendant Phil Merrell, who was the county's professional engineer. Both Merrell and Williams supervised Turner. Williams had known Turner since the late 1990s. Turner received three promotions, the first, in 1998 to be paint striper supervisor. Mr. Turner's second promotion was on September 27, 2000, to be foreman of the sign crew.

While Mr. Turner was on the sign crew, Williams said he was aware of no job performance problems with Mr. Turner. Merrell reviewed Mr. Turner's personnel file at the time of the 2000 promotion to sign crew foreman. Mr. Merrell and Mr. Williams had discussed issues, documented incidents of swearing, volatility, work-related motor vehicle accidents and physical altercations alleged against Mr. Turner. The file also contained written warnings and reprimand letters as well as written complaints. The county did not perform annual job evaluations. When Williams performed Turner's three-month job evaluation in 2001 after he became part of the sign crew supervisor, he did not review Turner's personnel file. Williams never looked at personnel files.

Plaintiffs allege that all of the Defendants deprived them of their

ORDER - 4

First, Fourth, and Fifth Amendment right to privacy in intimate personal information, their First Amendment free speech right, and their First Amendment free association right.  Plaintiffs allege that throughout his tenure with the County, Defendant Lon Turner referred to Plaintiffs Stinebaugh, Hill, White and Ostronik as "useless, lazy motherfuckers" and "worthless bastards," "fucking lazy bastards," and called them various other humiliating invectives.  The County, through Mr. Williams, knew that Mr. Turner regularly swore at the employees.  Defendant Turner called Plaintiff Crider terms such as "blond sorority bitch", "ditzy", and "dumb." He also told the rest of the crew that Crider was a silly sorority girl who was only good for a distraction. He said she had a snippy, bitchy attitude.  Plaintiff Hoffman alleges that she heard rumors that Mr. Turner had been telling co-workers that Hoffman was promiscuous and would have sex with anyone.

Mr. Turner denies that he ever called any of the Plaintiffs by derogatory names.  Plaintiffs are not able to identify any lost opportunity with the Public Works Department, such as a promotion or other benefit, nor have they been able to identify any lost opportunity at any other place of potential employment.  Plaintiff Ostronik and Plaintiff White have both been promoted during the time period of which they complain.

Plaintiff White alleges that on December 9, 2005, Defendant Turner asked Plaintiff Hill to show him where White lived because he believed that White was having a relationship with one of the other county

ORDER – 5

employees.  Plaintiff Hill also alleges that Mr. Turner showed him the time sheets of White and the other employee as evidence of his suspicion. Plaintiffs allege that Mr. Turner also asked another unidentified employee whether White was in a relationship with a co-worker.

Plaintiff White states that he confronted Mr. Turner about these incidents, and Mr. Turner allegedly pushed him in the chest with his finger and told him he was going to "take [him] down" by catching him sleeping with the other employee.  Mr. Turner denies that he ever sought to determine whether Plaintiff White was having an affair with a co-worker, or that he compared time sheets to make such a determination.

The essence of Plaintiff White's claim is that Mr. Turner suspected him of carrying on an affair with a co-worker based upon comparing their time sheets, sought to confirm this suspicion, and had a heated argument with White about it.  Defendants state that Mr. Turner could not have compared time sheets as Plaintiffs allege, as he did not have access to those records.

Plaintiffs allege that they were deprived of privacy rights in intimate personal information when Mr. Turner took photos of them in the bathroom, sitting on the toilet, and then placed those photos on a bulletin board in his office under the caption "Employee of the Month." There is no dispute that photos of certain of the Plaintiffs using the restroom were taken, however, Mr. Turner denies taking the photos.

According to Defendants, Plaintiff Allen Hill took photos of his co-workers using the toilet.  Plaintiff Sam Ostronik also allegedly took

ORDER - 6

photos of his co-workers using the toilet.  Neither Defendants Loney, Carey, Tompkins, Winter, Merrell or Williams participated in taking the photographs of the County employees.  Defendants state that no intimate body parts are visible in the bathroom/toilet pictures about which plaintiffs complain.  With respect to the subjects whose faces are visible in the photos, those subjects appear to be smiling or laughing.

Plaintiffs allege that their privacy rights were violated when Mr. Turner allegedly "hid" a video camera in the break room and taped portions of activities in the break room in November of 2004 for use in a video that was shown at the annual employee Christmas party. Plaintiff Crider is not alleging a claim related to that video.

Plaintiff White admits that he participated in making the video. Other Plaintiffs were aware that they were being videotaped in certain portions of the video tape.  Plaintiffs acknowledge that the portions of the video of which they were allegedly unaware did not disclose any personal or intimate information.

Additional video images which were recorded depicted the District 1 road crew at a typical morning work meeting.  This video recording was filmed, in part, in the District 1 meeting room, which is frequently used by Public Works employees.  The nature of the alleged recorded conversation was work-related and the recording occurred during normal work hours.

Plaintiffs have testified that they did not find anything particularly offensive about those portions of the video in the break

ORDER - 7

room/meeting room, and that they would not have done anything differently had they known the video was being taken.

Defendants contend that Plaintiffs voluntarily participated in other portions of the video at issue, wherein several of the Plaintiffs bare their thonged buttocks to the camera while standing in the out of doors during daylight working hours. Some of the Plaintiffs also voluntarily participated in making a photo entitled "See Ya Around Water-Ass," wherein bare buttocks were revealed.

With the exception of Plaintiff Crider, all Plaintiffs received the County personnel and policy handbook which detailed the process for making complaints. Further, for those Plaintiffs covered by union contracts, union grievance procedures were available. Plaintiff Crider filed an L&I claim for alleged injuries sustained while working.

Plaintiff Ostronik was chosen at random to dig a hole for the installation of a flag pole. Due to the size and type of flag pole being installed, the hole was required to be dug by hand. The County also retained a special tool for digging the hole. Plaintiff Ostronik filed an L&I claim for alleged injuries sustained while working. Id.

Defendants state that Plaintiffs have no direct evidence that the Commissioners, Jay Winter or Phil Merrell were aware of the actions of which they complain. Defendants further state there is no evidence that anyone ever complained to Phil Merrell, Jay Winter or the Commissioners about Dick Williams, or that anyone even had any problem with Mr. Williams. The Commissioners and Jay Winter took remedial action with

ORDER - 8

respect to Phil Merrell when there were complaints.

Turner was promoted to Foreman in 2004, eight years after his last employment incident. Plaintiff Hoffman claims that Lon Turner grabbed her buttocks on or about January 2005. Plaintiff Stinebaugh alleges that Turner physically assaulted him in 1984 or 1985 and again in 1996. Plaintiff White acknowledges that he was not physically harmed when Defendant Turner allegedly poked him in the chest with his finger.

On December 19, 2005, the Plaintiffs in this lawsuit, with the exception of Katie Crider, Traci Hoffman, T.J. Hill and Kim Schwartz, filed a grievance with the Walla Walla County Engineers office. As soon as the Plaintiffs filed their grievance, the County began investigating the claims which were made. On January 21, 2006, the report of the investigation was released. As a result of the County's investigation, Mr. Turner's employment was ultimately terminated in 2007. Both Phil Merrell and Dick Williams also left the County after the grievance was filed.

Plaintiffs filed administrative claims for damages with Walla Walla County on or about September 15, 2006. Plaintiffs filed the instant lawsuit April 24, 2007.

**III. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence

of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir.1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548); see also *Jespersen v. Harrah's Operating Co., Inc.*, 392 F.3d 1076, 1079 (9th Cir.2004). "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation and internal quotation signals omitted); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (A party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under

ORDER - 10

substantive law governing the case. See *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348.

**A.    42 U.S.C. §1983**

Section 1983 permits an individual whose federal statutory or constitutional rights have been violated by a public official acting under color of state law to sue the official for damages. 42 U.S.C. § 1983 (2000). Public officials are afforded protection, however, "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity shields them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818, 102 S.Ct. 2727. If a public official could reasonably have believed that his actions were legal in light of clearly established law and the information he possessed at the time, then his conduct falls within the protective sanctuary of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

Government officials are protected by qualified immunity unless they violate clearly established law of which a reasonable person would have known. *Id*. The qualified immunity standard is a generous one. It "gives

ORDER - 11

ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Applying the standard is a two-part process. The first question is whether the law governing the official's conduct was clearly established. If the relevant law was not clearly established, the official is entitled to immunity from suit. *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997), *cert. denied*, 522 U.S. 852 (1997). If the law was clearly established, the next question is whether, under that law, a reasonable official could have believed the conduct was lawful. *Id*. If either prong is satisfied, then the official is entitled to qualified immunity.

A plaintiff who seeks damages for the violation of a right protected by the United States Constitution or other federal law may overcome the qualified immunity defense only by showing that the rights infringed were clearly established by federal law at the time of the conduct at issue. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1138 (9th Cir. 1986). The failure of a plaintiff to show that the federal right was clearly established at the time it was infringed mandates that judgment be entered for the defendant. *Lutz v. Weld Co., School Dist. No. 6*, 784 F.2d 340, 343 (10th Cir. 1986).

County Defendants argue that Plaintiffs cannot show that the County Defendants, acting under the color of law, deprived them of a

ORDER - 12

constitutional right.

Defendants further argue that there must be a showing of personal participation by the supervisor in the alleged rights deprivation: there is no respondeat superior under section 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir.2001).

County Defendants assert that liability hinges on the participation of the individual Defendant. To impose liability on a local government entity, Plaintiffs must show that an authorized policy maker ratified a subordinate's unconstitutional action or that an employee violated constitutional rights pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant.

County Defendants conclude that Defendants Carey, Loney, Tompkins, Winter, Merrell and Williams are entitled to qualified immunity as a matter of law.

Defendant Turners argue that Plaintiffs cannot establish that a constitutional violation occurred and that it was a clearly defined right. The Turner Defendants conclude Mr. Turner is entitled to qualified immunity as well.

With respect to the 42 U.S.C. § 1983 claim, this Court has struggled to interpret what constitutes an invasion of privacy and whether a constitutional violation exists as to these particular Plaintiffs based on the totality of circumstances. This Court agrees with Defendants that such an analysis is factually oriented and should be determined by the

ORDER - 13

totality of the circumstances and the particular facts relating to each of the Defendants in this case.   The Court discusses below the various allegations with respect to the various defendants.

### 1.   Federal Privacy Right - Bathroom Photographs

In the Complaint, Plaintiffs allege that they were deprived of privacy rights in intimate personal information as guaranteed by the First, Fourth, and Fifth Amendments to the U.S. Constitution when Mr. Turner allegedly took photos of them in the bathroom, sitting on the toilet, and then placed those photos on a bulletin board in his office under the caption "Employee of the Month."   There is no dispute that Plaintiffs Stinebaugh, White, Ostronik, and Hill had their pictures taken while using the restroom.

That such an expectation of privacy is reasonable is consistent with the holdings from other circuits that have reached the issue. See, e.g., *United States v. Delaney*, 52 F.3d 182, 188 (8th Cir.1995) (recognizing that the "occupant of a toilet stall in a public rest room may have a reasonable expectation of privacy"); *Smayda v. United States*, 352 F.2d 251, 257 (9th Cir.1965) (noting that "every person who enters an enclosed stall in a public toilet is entitled to believe that, while there, he will have at least the modicum of privacy that its design affords").

Although Plaintiffs claim to have had a subjective expectation of privacy behind a closed stall bathroom, the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," "reasonable," or "legitimate" expectation of privacy.

*Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). This inquiry has two parts: a determination of whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy" and a determination of whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as reasonable." *Id*. (internal quotation marks and citations omitted).

While case law informs that society is prepared to recognize an expectation of privacy behind a closed stall bathroom as reasonable, it is disputed whether such an expectation by Plaintiffs Stinebaugh, White, Ostronik, and Hill was reasonable. This is so because their conduct included voluntary participation in portions of a video at issue in the instant case, wherein several of the Plaintiffs bare their thonged buttocks to the camera. Plaintiffs also appeared to be smiling into the camera with knowledge of their picture being taken.

With respect to qualified immunity, whether a government official is entitled to qualified immunity is purely a legal question and as such, is particularly amenable to resolution on summary judgment. *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997). The Court concludes that the right to privacy concerning the taking, posting and retention of personally revealing photographs was clearly established in the law prior to the acts alleged to have occurred in this case.

The parties also dispute whether Mr. Turner took the bathroom photographs. The Court finds there are issues of fact that can only be

ORDER - 15

resolved at trial as to this claim against Defendant Turner and summary judgment is precluded.   This holding, however, does not preclude a finding by the trier of fact that the offending acts, if they occurred, were voluntarily consented to and or joined in by Plaintiffs thereby precluding liability under both immunity and general liability standards.

As to Defendant Walla Walla County, the Court finds that Plaintiffs have failed to show that an authorized policy maker ratified a subordinate's unconstitutional action or that an employee violated constitutional rights pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant Walla Walla County. Summary judgment concerning Plaintiffs' 42 U.S.C. §1983 claims is granted as to Defendant Walla Walla County with regard to the bathroom photographs.

As to Defendant County Commissioners, summary judgment is granted with respect to the bathroom photographs as there is insufficient evidence of their personal involvement or knowledge.   The same is true for Defendants Winter, Williams, and Merrell, as Plaintiffs have likewise failed to show any personal involvement.   There is no evidence that these Defendants violated the Plaintiffs' constitutional rights, that they ratified the conduct of Turner, or that they acted with reckless indifference to the rights of others for purposes of the analysis under 42 U.S.C. §1983.   These defendants are therefore entitled to summary judgment.

/ / /

ORDER – 16

## 2.    Federal Privacy Right - Video

Plaintiffs allege that they were deprived of privacy rights in intimate personal information as guaranteed by the First, Fourth, and Fifth Amendments to the U.S. Constitution when Mr. Turner took a video to show at the annual employee Christmas party, portions of which were without Plaintiffs' knowledge/consent.  There is a dispute as to whether some of the Plaintiffs were aware of the hidden camera and participated in the taping as well.  Defendants argue that Plaintiffs acknowledge that portions of the video of which they were unaware, did not disclose any personal or intimate information.  Finally, Defendants argue that there is no legitimate expectation of privacy in a work place break room that was accessible to anyone who worked for the county government.

In assessing oral communications in the eavesdropping and wiretapping context, the Fifth Circuit has focused on whether one has "exhibited a subjective expectation of privacy that [his communications] would remain free from governmental intrusion" and whether one "took normal precautions to maintain privacy." *Kee v. City of Rowlett*, 247 F.3d 206, 213 (5th Cir.2001)[2] *(quoting United States v. Cardoza-Hinojosa*, 140 F.3d 610, 615 (5th Cir.1988)). In particular, the courts have examined a non-exhaustive list of factors including:  (1) the volume of the communication or conversation; (2) the proximity or potential of other

---

[2] *Kee* held that *Katz* is the proper test for both privacy violations pursued under 42 U.S.C. § 1983 and violations of interception of oral communications under 18 U.S.C. § 2510.  See *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1976).

individuals to overhear the conversation; (3) the potential for communications to be reported; (4) the affirmative actions taken by the speakers to shield their privacy; (5) the need for technological enhancements to hear the communications; and (6) the place or location of the oral communications as it relates to the subjective expectations of the individuals who are communicating. *Kee*, 247 F.3d at 214-15.

In the workplace, such privacy expectations must be evaluated on a case by case basis. There have been cases where employees have been found to have manifested a subjective expectation of privacy in their workspace. See *United States v. McIntyre*, 582 F.2d 1221, 1224 (9th Cir.1978)(finding a microphone and transmitter placed in an employee's office to violate his subjective expectation of privacy).

While the determination of an objectively reasonable expectation of privacy is a question of law for the court, it is also a highly fact intensive inquiry. See *O'Connor v. Ortega*, 480 U.S. 709, 718, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) ("Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.").

The Court concludes that the right to privacy concerning the secret taking and publishing of a video was clearly established in the law prior to the acts alleged to have occurred in this case. At this stage in the litigation, it is premature to conclude that the Plaintiffs could prove no set of facts under which they could establish both a subjectively and

objectively reasonable expectation of privacy in the work break room where the video was allegedly secretly taken.

As suggested by the discussions in section 1 above, the Court finds it unnecessary to analyze whether Defendant Turner or other individual Defendants are entitled to qualified immunity. The alleged privacy right concerning the video (freedom from covert audio and video recordings) is an established right and factual issues exist concerning whether there was consent by the Plaintiffs given the fact that they voluntarily participated in some portions of the video.

As to the Defendant Walla Walla County's liability, a municipality may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions. *Lytle v. Carl*, 382 F.3d 978 (9th Cir.2004) citing *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir.1999). To show ratification, a plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *Id.* at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 127 (1988). The policymaker must have knowledge of the constitutional violation and actually approve of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. *Id.*

As to Defendant Walla Walla County, the Court finds that Plaintiffs have failed to show that an authorized policy maker ratified a subordinate's unconstitutional action or that an employee violated constitutional rights pursuant to an expressly adopted official policy

ORDER - 19

or a longstanding practice or custom of the Defendant Walla Walla County. Summary judgment is granted as to Defendant Walla Walla County with regard to the video.

As to Defendant County Commissioners and Defendants Winter, Williams, and Merrell, summary judgment is likewise granted with respect to the video as there is insufficient evidence of their personal involvement or knowledge. There is no evidence that these Defendants violated the Plaintiffs' constitutional rights, that they ratified the conduct of Turner, or that they acted with reckless indifference to the rights of others. These defendants are therefore entitled to qualified immunity and summary judgment.

### 3.  Federal Privacy Right - Plaintiff Tom White's Sexual Relationship Investigation

Plaintiff Thomas White alleges that he was deprived of privacy rights in intimate personal information as guaranteed by the First, Fourth, and Fifth Amendments to the U.S. Constitution when Mr. Turner asked Plaintiff Hill to show him where White lived because he believed that White was having a relationship with one of the other county employees. Plaintiff Hill also alleges that Mr. Turner showed him the time sheets of White and the other employee as evidence of his suspicion. Plaintiffs allege that Mr. Turner also asked another, unidentified, employee whether White was in a relationship with a co-worker.

Defendants argue that this was an isolated event and there is no evidence Defendant Turner discovered anything about Plaintiff White's sexual relationship. Defendants further argue that Plaintiff White has

ORDER - 20

not shown that the Defendant County Commissioners, Williams, Merrell or Winter had known of this alleged constitutional violation and approved of it. The Court agrees in part.

The Court finds that genuine issues of material fact preclude entry of summary judgment regarding whether Defendant Turner's conduct, under the specific facts of this case, violated a constitutional right. This claim against all Defendants, except Turner, must be dismissed. The Court concludes the alleged privacy violation concerning the alleged intrusion into Plaintiff White's sexual relationship is an established right. Defendant Turner has no right to qualified immunity on the claim, if it is proven.

Plaintiffs have failed to show that an authorized policy maker ratified a subordinate's unconstitutional action or that an employee violated constitutional rights pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant Walla Walla County. Summary judgment is granted as to Defendant Walla Walla County with regard to this privacy right violation involving Plaintiff Tom White.

As to Defendant County Commissioners, summary judgment is likewise granted with respect to Plaintiff White's privacy violation allegation as there is insufficient evidence of their personal involvement or knowledge. As to Defendants Winter, Williams, and Merrell, summary judgment is granted with respect to Plaintiff White's privacy violation allegation as the evidence fails to show any personal involvement as to

ORDER - 21

this claim.   There is no evidence that these Defendants violated the Plaintiffs' constitutional rights, that they ratified the conduct of Turner, or that they acted with reckless indifference to the rights of others.   These defendants are therefore entitled to summary judgment.

### 4.   First Amendment - Free Speech

Defendants argue Plaintiff employees cannot establish the three elements to prove a claim against a government employer for a violation of the First Amendment right to free speech.   Namely, Plaintiffs must show:  1) that he or she engaged in protected speech; 2) employer took adverse employment action; and 3)that his or her speech was a substantial or motivating factor for the adverse employment action.   *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003).

Defendants state that Plaintiffs have failed to identify any protected speech and none of Plaintiffs have identified any disciplinary action taken because of having exercised their free speech rights.

Defendant Turners add that evidence of complaints by Plaintiffs were about each other or general complaints about their employment, not public wrongdoing.   This was common in the Road Department.   Defendant Turner states he is entitled to qualified immunity on the Free Speech claim because Plaintiffs have failed to establish a constitutional violation.

An employee's speech is protected under the First Amendment if it addresses "a matter of legitimate public concern." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 571, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).  *See also Connick v. Myers*, 461 U.S. 138, 149-50, 103 S.Ct. 1684, 75 L.Ed.2d 708

(1983). "[S]peech that concerns 'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983) (*quoting Thornhill v. Alabama*, 310 U.S. 88, 102, 60 S.Ct. 736, 84 L.Ed. 1093 (1940)). On the other hand, speech that deals with "individual personnel disputes and grievances" and that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *Id*. The determination of whether an employee's speech deals with an issue of public concern is to be made with reference to " 'the content, form, and context' " of the speech. *Allen v. Scribner*, 812 F.2d 426, 430 (9th Cir.1987)(*quoting Connick*, 461 U.S. at 147, 103 S.Ct. 1684).

The Court finds under this standard that Plaintiffs' assertions of protected speech do not regard matters of public concern. Summary judgment is granted in favor of all Defendants with respect to this First Amendment Free Speech claim.

### 5.  First Amendment - Free Association

Defendants argue that similar to the Free Speech claims, Plaintiffs must show the following three elements:  1) that he or she engaged in protected association; 2) the employer took adverse employment action against them; and 3) that his or her speech was a substantial or motivating factor for the adverse employment action.

Defendants assert that Plaintiffs have failed to allege any

ORDER - 23

"association" much less ones that addressed matters of public concern. Further, Plaintiffs have shown no evidence that Defendants retaliated against them because of their participation in a protected association.

Defendant Turners add that Mr. Turner is entitled to qualified immunity because there is no reason that he should have known that his behavior created a Freedom of Association violation for his employees.

Plaintiffs, on the other hand, argue that Mr. Turner told Plaintiffs not to have contact with the spray crew, the engineer's or administrative offices, and with various county employees at odds with Turner. Turner also ordered Plaintiff Crider to sit away from District One road crew during meetings, at lunch or other functions. Additionally, Plaintiffs assert that Defendant Merrell had directed them not to speak to the commissioners. Plaintiffs argue that neither Turner nor County Defendants can show any overriding governmental interest in preventing the associations.

As to the "adverse employment actions," Plaintiffs indicate these consisted of Plaintiff White being threatened with his job if he ever went into the office and spoke with anyone there; Plaintiff Stinebaugh was threatened more than once, both by reprimand and telling him to expect "negative consequences" if he ever spoke to the office, engineer's office or administrative offices again; Plaintiff Crider was hit on the head; Plaintiff Ostronik injured by having to dig a hole; and Plaintiff Hill was embarrassed.

Defendants appear to place unfounded emphasis on the fact that none

of the Plaintiffs were fired and some were in fact promoted. To constitute an adverse employment action, a government act of retaliation need not be severe and it need not be of a certain kind. *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir.2003). Nor does it matter whether an act of retaliation is in the form of the removal of a benefit or the imposition of a burden. In *Allen v. Scribner*, the plaintiff alleged that he had been "reassigned to another position, and otherwise harassed in retaliation for ... remarks he made to the press." 812 F.2d at 428. The Ninth Circuit found this allegation sufficient to form the basis of a First Amendment claim.

In *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir.1989), the plaintiff alleged that he had been banned from attending certain meetings and participating as an evaluator in training exercises in retaliation for his political activity. The Ninth Circuit found this allegation sufficient. In *Ulrich v. City and County of San Francisco*, 308 F.3d at 977, the plaintiff alleged that his government employer had subjected him to an investigation, refused to rescind his resignation, and filed an adverse employment report in retaliation for his protected speech. Again, the Ninth Circuit found that his allegation was sufficient to state a § 1983 claim seeking redress for violation of First Amendment rights. In *Anderson v. Central Point School District*, 746 F.2d 505, 506 (9th Cir.1984), the plaintiff alleged that he had been temporarily suspended from his coaching duties and insulted by his employer. The Ninth Circuit allowed the plaintiff to recover under the First Amendment

for emotional distress and damage to his reputation.  The Ninth Circuit's findings in these cases were not dependent on any characterization of the government action as a denial of a valuable governmental benefit or privilege.

The Ninth Circuit stated in *Carpenter*, the relevant inquiry is whether the state had taken "action designed to retaliate against and chill political expression." 881 F.2d at 829 (quoting *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.1986)).  Or, as the Ninth Circuit had earlier stated in *Allen*, the inquiry is whether "the exercise of the first amendment rights was deterred" by the government employer's action. 812 F.2d at 434 n. 17.

As to Defendant Walla Walla County, the Court finds that Plaintiffs have failed to show that an authorized policy maker ratified a subordinate's unconstitutional action or that an employee violated constitutional rights pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant Walla Walla County. Summary judgment is granted as to Defendant Walla Walla County with regard to the free association violation claim.

As to Defendant County Commissioners and Defendants Winter, and Williams, summary judgment is likewise granted with respect to the free association claim as there is insufficient evidence of their personal involvement or knowledge.  There is no evidence that these Defendants violated the constitutional rights of Plaintiffs, that they ratified the conduct of Turner, or that they acted with reckless indifference to the

1   rights of others. These defendants are therefore entitled to summary

2   judgment.

3       The Court finds that there are triable issues of fact as to the free

4   association constitutional violation alleged as to Defendant Turners and

5   Merrell.

6   **B.   Washington State Violation of Privacy Claim**

7       Plaintiffs claim involves intrusion of privacy under the Washington

8   State Constitution Art. 1, §3.  The same allegations (bathroom photos,

9   video, and Turner's alleged attempt to determine if Plaintiff White

10  having an affair) are made by Plaintiffs as was discussed under the

11  federal constitution privacy right violation above.

12     Defendants again argue that nothing about the bathroom photos or

13  video would be highly offensive to a reasonable person (no intimate body

14  parts are visible and subjects are smiling or laughing in bathroom

15  photos) and the video depicts a typical morning business meeting.

16  Defendants note that Plaintiffs have testified they did not find anything

17  particularly offensive about the portion of video that they were not

18  aware was being taken.

19     Further, Defendants point out that Plaintiffs voluntarily

20  participated in the more offensive portions of the video wherein several

21  of the Plaintiffs bare their thonged buttocks to the camera.  It is noted

22  that Plaintiffs  also voluntarily participated in making a photo titled

23  "See Ya Around Water-Ass" as a retirement gift which depicts more graphic

24  views of Plaintiffs' intimate body parts than the photos complained of.

As to the Turner's attempt to uncover White's personal relationships, Plaintiffs have no proof that actually occurred. According to Defendants, Turner could not have compared time sheets as he did not have access to those records.

We turn to whether Defendant Walla Walla County has a compelling interest justifying its intrusion upon privacy. The test for a compelling interest is not some "fixed, minimum quantum of governmental concern," but rather whether the government's interest is sufficiently important (i.e., a "relatively high degree of government concern") to justify the particular invasion of the constitutional right in question. *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 661 (1995). "To constitute a compelling interest, the purpose must be a fundamental one and the legislation must bear a reasonable relation to the achievement of the purpose." *Collier v. City of Tacoma*, 121 Wash.2d 737, 754, 854 P.2d 1046 (1993) (article I, section 5). A "compelling interest" is "based in the necessities of national or community life such as clear threats to public health, peace, and welfare." *Munns v. Martin*, 131 Wash.2d 192, 200, 930 P.2d 318 (1997) (article I, section 11). As would be expected, Defendant Walla Walla County has established no compelling interest for the taking and publishing of the bathroom photographs, video, or alleged intrusion into an employee's sexual relationship.

At this stage in the litigation, as noted above with respect to the federal constitutional privacy violation claim, it is premature to conclude that the Plaintiffs could prove no set of facts under which they

ORDER - 28

could establish both a subjectively and objectively reasonable expectation of privacy for the alleged events. It is difficult to imagine an affair more private than the use of a toilet in a closed stall bathroom. Therefore, summary judgment is denied on this claim under Washington state law as to Defendant Walla Walla County (scope of employment issues remain) and Defendant Turners. As to Defendant County Commissioners, the state law privacy claim is dismissed based on insufficient evidence of personal involvement. As to Defendants Williams, Merrell and Winters, the state law privacy claim is also dismissed based on insufficient evidence of their involvement.

**C.    Negligent Hiring, Retention and Supervision Claims**

This claim is raised against the County Defendants only. Plaintiffs allege that the County negligently hired, retained and supervised Turner, Williams and Merrell.

Defendants argue there was no notice that there was a problem with either Lon Turner or Dick Williams. Once there were complaints made, the County immediately investigated with resultant remedial action taken with respect to Defendant Merrell. Both Phil Merrell and Dick Williams left the County after the 2005 grievance was filed. Defendants further state that other than a few incidents, Turner had a positive employment history and was promoted to Foreman in 2004, eight years after his last incident.

An employer has a duty to protect its employees, customers, clients, and visitors from injury caused by employees who the employer knows, or should know, pose a risk of harm to others. This duty arises from common

law and is breached by an employer who fails to exercise "reasonable" care to insure that its workers and customers are free from risk of harm inflicted by unfit employees. See Restatement (Second) of Torts § 283. When an employer breaches that duty, it may be liable for damages under the tort of "negligent hiring" or "negligent retention."  The difference between negligent hiring and negligent retention is the time at which the employer's negligence occurs. With negligent hiring, it occurs at the time of hiring; with negligent retention, it occurs in the course of employment.

The plaintiff who alleges negligent hiring must show that (1) the employer knew or, in exercising ordinary care, should have known of its employee's incompetence when the employee was hired, and (2) that the negligently hired employee caused the plaintiff's injuries. *Smith v. Sacred Heart Medical Center*, 144 Wash. App. 537, 184 P.3d 646 (Div. 3 2008) (trial court properly dismissed negligent supervision claim in light of plaintiff's failure to establish that employer knew of unfitness of employee).

The focus in a negligent hiring case should be upon the process taken by the employer, rather than upon whether specific questions were asked. *Brown v. Labor Ready Northwest, Inc.*, 113 Wash. App. 643, 54 P.3d 166 (2002) (trial court properly dismissed claim against temporary labor company where duty to determine fitness lay upon employer who hired employee).  Moreover, Washington courts have used a balancing test to determine if the type of employment at issue requires the added burden

ORDER - 30

to the employer of performing a thorough background check. *Carlsen v. Wackenhut Corp.*, 73 Wash. App. 247, 868 P.2d 882 (1994) (*citing La Lone v. Smith*, 39 Wash. 2d 167, 234 P.2d 893 (1951)). Employment that involves contact with third persons and the possibility of subjecting such persons to risk of harm increases the duty to investigate potential employees. *Carlsen v. Wackenhut Corp.*, 73 Wash. App. 247, 868 P.2d 882 (1994). However, where the injury arises from circumstances other than those reasonably foreseeable by the employer, no claim for negligent hiring can be sustained. *Betty Y. v. Al-Hellou*, 98 Wash. App. 146, 988 P.2d 1031 (1999) (assault of child not foreseeable from hiring laborer to rehabilitate vacant apartments).

As to the claim of negligent hiring, the Court finds no liability for the employer, Defendant Walla Walla, based on the facts before the Court because the alleged injuries arise from circumstances other than those <u>reasonably</u> foreseeable by the employer. Summary judgment is granted as to all Defendants.

As to the claim of negligent retention, the Court finds that based on the record before the Court, which is in need of further development, summary judgment is denied as to the employer, Defendant Walla Walla County only. Summary judgment is granted as to all non-employer Defendants.

An employer is not liable for negligent supervision of an employee unless the employer knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others or was

ORDER - 31

otherwise unfit for the position. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48 (1997). A negligent supervision claim requires showing: (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees. *Briggs v. Nova Services*, 135 Wash. App. 955, 966-67, 147 P.3d 616, 622 (Div. 3 2006) (no evidence that employee presented risk of harm to other employees).

Plaintiffs painstakingly set forth numerous facts supporting the County's apparent awareness of Mr. Turner being unfit for the positions he held in Plaintiffs' Statement of Additional Material Facts (Ct. Rec. 180). Therefore, the Court finds, at this stage in the litigation, it is premature to conclude that the Plaintiffs could prove no set of facts under which they could establish a prima facie case of negligent supervision against the employer in this case, Defendant Walla Walla County. Based on the record before the Court, which is in need of further development, summary judgment is denied as to Defendant Walla Walla County but granted as to all other non-employer Defendants.

The Court weighs in the fact that Washington's Industrial Insurance Act ("IIA") generally precludes civil suits by workers for injuries or occupational diseases incurred in the course of employment. *McCarthy v. Department of Social & Health Servs.*, 110 Wash.2d 812, 815-16, 759 P.2d

351 (1988). The claims before the Court, with possibly the exception of Plaintiff Crider's head injury, do not appear to be occupational injuries. WAC 296-14-300 (claims based on mental conditions or mental disabilities caused by stress, including stress caused by conflicts or relationships with supervisors, fall outside the definition of an occupational disease). The Court does not find these alleged injuries are precluded based solely on employer immunity under the IIA.

### D.  Assault and Battery Claims

Plaintiff Crider alleges that Defendant Lon Turner physically assaulted her in **June of 2005** by hitting her over the head with a stop sign used for flagging while she was working for Walla Walla County as a summer employee. Defendants argue that this incident is barred by Washington's Industrial Insurance Act ("IIA"), which precludes civil suits by workers for injuries or occupational diseases incurred in the course of employment. *McCarthy v. Department of Social & Health Servs.*, 110 Wash.2d 812, 815-16, 759 P.2d 351 (1988). The Court finds this particular claim is barred by the IIA and, based on other factors, including the duration of her employment and lack of evidence of emotional distress, dismisses Plaintiff Crider's claims against all Defendants. It is noted that Plaintiff Crider filed an L&I claim for her alleged injuries sustained while working.

Plaintiff White alleges that apparently **sometime after December 9, 2005** he was thumped on the chest by Turner. White states that Mr. Turner's physical contact with him did not hurt, but it was deeply

offensive to him.  Defendant argues that White fails to demonstrate that he was intentionally harmed or that the conduct was offensive in any manner.  The Court does not find this claim barred by the Washington IIA as the claim is not based on an injury as defined by the Act (a sudden and tangible happening of a traumatic nature). RCW 51.08.100; *Wheeler v. Catholic Archdiocese*, 65 Wash.App. 552, 566, 829 P.2d 196 (1992), rev'd on other grounds, 124 Wash.2d 634, 880 P.2d 29 (1994). Neither is it an occupational injury. WAC 296-14-300 (claims based on mental conditions or mental disabilities caused by stress, including stress caused by conflicts or relationships with supervisors, fall outside the definition of an occupational disease).

The claim does not appear to be barred by the applicable two-year statute of limitations nor by the IIA.  Although Defendant Turner argues that there is no evidence that he intended to cause any of Plaintiffs harm and Plaintiffs claims must be dismissed, based on the state of the record, the Court denies summary judgment with respect to this claim as to Defendant Turners.

As to White's alleged assault regarding a 2005 incident wherein Turner allegedly threw a broken rake at White (Complaint at ¶9.5), the claim appears to be abandoned.

Plaintiff Hoffman alleges she was grabbed in the buttocks by Turner in **January 2005.**  This claim appears to be barred by the two-year statute of limitations as suit was filed on April 24, 2007.

Plaintiff Stinebaugh alleges he was pushed away from his computer

**on or around April 20, 2005** by Turner who also physically assaulted him in 1984 or 1985 and then again in 1996. As to the alleged assaults in 1984 or 1985 and 1996, the two-year statute of limitations bars these claims. As to the alleged assault occurring "on or around April 20, 2005," it is also barred by the two-year statute of limitations as it cannot be said with certainty it happened on or after April 24, 2005. This claim, therefore, must be dismissed based on the record.

The Court next addresses Defendant Walla Walla County's liability with respect to the intentional tort claims. To hold an employer vicariously liable for assaults committed by its employee, it must establish that the employee was acting in furtherance of the employer's business and that he or she was acting in the course of scope of employment when the tortuous act was committed. *Thompson v. Everett Clinic*, 71 Wn.App. 548 (1993). If an employee commits an assault in order to affect a purpose of his own, the employer is not liable. The Court finds that there is insufficient evidence to permit a claim to go forward against Defendant Walla Walla County on any alleged assault because the act(s) were outside the scope of Turner's employment and there is no evidence of ratification. As such, the surviving assault and battery claim (thump on Plaintiff White's chest) against Defendant Walla Walla County is dismissed.

As to the Defendant County Commissioners and Defendants Williams, Merrell and Winters, the Court also dismisses the assault and battery claims based on insufficient evidence of their personal involvement.

ORDER - 35

The Court finds that as to Plaintiff White's intentional tort claim (thump on chest), summary judgment is denied at this stage of litigation and this claim against Defendant Turner only survives.

**E.   Intentional Infliction of Emotional Distress ("IIED")**

Defendant Turners argue that IIED requires the following elements under Washington law:  1) extreme and outrageous conduct; 2) intentional or reckless infliction of emotional distress; and 3) actual result to Plaintiff of severe emotional distress. *Birklid v. Boeing Co.*, 127 Wn.2d 853, 867 (1995).  To establish the tort of outrage, Plaintiffs must show that the conduct giving rise to their claim was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291, 295 (1975) (en banc).

Defendant Turners argue that Mr. Turner's conduct was not so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.  In support of their argument, Defendant Turners point out the entire road department joked around with each other whether appropriate or not.  The behavior that Plaintiffs allege was so offensive was behavior that they also participated in with Turner and others.

Plaintiffs have not alleged that any named defendant engaged in any conduct that rises to the level required by Washington law.

This claim is not asserted against the County Defendants.

ORDER - 36

The Court grants summary judgment on the IIED claim as against all Defendants whom the claim is asserted against.

**F.    Negligent Infliction of Emotional Distress ("NIED")**

Defendants argue that Plaintiffs cannot recover for NIED unless they prove: 1) negligence (duty, breach, proximate cause, injury); and 2) the additional requirement of objective symptomatology. *Kloepfel v. Bokor*, 149 Wn.2d 192, 199 (2003). Defendants argue that Plaintiffs' claim fails because they cannot establish negligence.

The County Defendants argue that to hold an employer vicariously liable for NIED by its supervisor in the workplace, a Plaintiff employee must prove that:  1) the supervisor acted on employer's behalf; 2) supervisor failed to act with reasonable care; 3) supervisor's acts exceeded acceptable employee discipline or employer's reasonable response to a personality dispute; 4) supervisor's negligent acts proximately cause injury to Plaintiff; and 5) Plaintiff's emotional distress is manifested by objective symptoms. *Snyder v. Med.Serv.Corp.*, 145 Wn.2d 233, 252 (2001).

County Defendants argue that Plaintiffs cannot show that the County Commissioners, Winter or Merrill were aware of actions complained of given that they have no specific recollection of who they reported anything to, when they reported it, or what they said.

Defendant Turners argue that nothing about Lon Turner's behavior, even assuming Plaintiffs allegations are true and at times his conduct was inappropriate, can be remotely categorized as "unreasonably

dangerous" nor did it cause a physical injury.

Defendants state that no duty was owed by Mr. Turner to Plaintiffs. Defendants also state that only Plaintiff Ostronik and Plaintiff Crider voiced allegations of physical injury.

Plaintiffs assert, in opposition, that Mr. Turner had a duty to use reasonable care towards his crew members. Further, Mr. Turner's negligence caused emotional harm. With respect to Plaintiffs Stinebaugh and Ostronik, Plaintiffs argue Mr. Turner failed to provide basic safety equipment. With regards to Plaintiff Crider, Stinebaugh and White, Mr. Turner controlled bathroom breaks and would withhold them as a means of control over his employees. As to breach, causation and damages, Plaintiffs assert that these elements are traditionally left for the trier of fact.

Negligent infliction of emotional distress is a recognized cause of action in Washington. *Hunsley v. Giard*, 87 Wash.2d 424, 435, 553 P.2d 1096 (1976). It can exist in an employment context. *Chea v. The Men's Wearhouse, Inc.*, 85 Wash.App. 405, 412, 932 P.2d 1261 (1997), review denied, 134 Wash.2d 1002, 953 P.2d 96 (1998). Although an employer must be given latitude in making decisions regarding employee discipline, an employer may be held responsible when its negligent acts injure an employee. *Chea*, 85 Wash.App. at 412, 932 P.2d 1261. In *Bishop v. State*, 77 Wash.App. 228, 235, 889, 889 P.2d 959 P.2d 959 (1995), the court held that employers have no duty to avoid inadvertent infliction of emotional distress when responding to workplace personality disputes.

ORDER - 38

Under Washington law, an employee can establish a claim of negligent infliction of emotional distress by showing: (1) that her employer's negligent acts injured her; (2) the acts were not a workplace dispute or employee discipline; (3) the injury is not covered by the Industrial Insurance Act, and (4) the dominant feature of the negligence claim was the emotional injury. *See Snyder v. Medical Service Corp. of Eastern Washington*, 98 Wash.App. 315, 988 P.2d 1023, 1028 (Wash.Ct.App.1999).

To survive summary judgment on a claim of negligent infliction of emotional distress, however, a plaintiff must prove he or she has suffered emotional distress by "objective symptomatology," and the "emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 136 Wash.2d 122, 135 (1998); *see also Hunsley v. Giard*, 87 Wash.2d 424 (Wash.1976). The symptoms of emotional distress must also "constitute a diagnosable emotional disorder." *Hegel,* 136 Wash.2d at 135; *Marzolf v. Stone*, 136 Wash.2d 122, 960 P.2d 424, 431 (1998).

Plaintiffs have not shown the additional requirement of objective symptomatology, proved with medical evidence. Therefore, as to all Defendants, this claim must be dismissed.

**G.    Respondeat Superior**

Plaintiffs allege that the County Defendants are vicariously liable for actions of Turner, Williams and Merrell based on respondeat superior principles. Defendants argue that a court should dismiss a claim against a Defendant employer based on allegedly tortious actions of its employees

when the tort claims are also dismissed.

The doctrine of respondeat superior is not a separate cause of action but a rule of law which holds the master responsible for the negligent acts of his servant, committed while the servant is acting within the general scope of his employment and in the pursuit of his master's business.  Whether an employee was acting within the scope of his or her employment is an issue of fact which may be considered under the principles of summary judgment. *Dickinson v. Edwards*, 105 Wash.2d 457, 466-67, 716 P.2d 814 (1986).  Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, the affidavits and depositions before the trial court demonstrate no genuine factual issue as to whether the employee was acting within the scope of his or her employment. *Dickinson*, at 467, 716 P.2d 814. An employer, however, may be relieved from liability as a matter of law. *Kuehn v. White*, 24 Wash.App. 274, 280-81, 600 P.2d 679 (1979); *see Kyreacos v. Smith*, 89 Wash.2d 425, 429-30, 572 P.2d 723 (1977) (if the jury could only reach one conclusion, scope of employment may be determined as a matter of law).

As to the tort claims dismissed for being barred by the statute of limitations or the IIA, liability under a respondeat superior theory is dismissed as well. As to respondeat superior theory for Plaintiff White's assault/battery claim (thump on the chest), summary judgment is granted as to Defendant Walla Walla County.  There is insufficient evidence to show Defendant Lon Turner was acting within the scope of employment.

ORDER - 40

Whether liability under respondeat superior has application on other claims which remain will be determined incident to further proceedings herein.

**IV.  CONCLUSION**

Based upon the reasons and authorities cited above**, IT IS HEREBY ORDERED:**

1.  Defendants' Motion to Exclude Riett Brown Jacks, **Ct. Rec. 42,** filed July 7, 2008, is **DENIED AS MOOT**.

2.  Plaintiffs' Motion to Expedite Hearing on Plaintiffs' Motion to Strike, **Ct. Rec. 213**, filed September 11, 2008, is **GRANTED**.

3.  Plaintiffs' Motion to Strike Additional Evidence Filed Jointly by Defendants on September 11, 2008, **Ct. Rec. 209**, filed September 11, 2008 is **DENIED**.

4.  County Defendants' Motion for Summary Judgment, **Ct. Rec. 103**, filed July 25, 2008, is **DENIED in part** and **GRANTED in part** as set forth above.  All claims are dismissed against Defendant County Walla Walla except for the Washington State violation of privacy claim, and the negligent retention and negligent supervision claims.  All claims against the Defendant County Commissioners are dismissed.  All claims against Defendants Winter, Merrell and Williams are dismissed except for the free association claim against Merrell.  The defamation claims, the Fourteenth Amendment claims dealing with plaintiffs' reputations, and the breach of contract claims are dismissed against all Defendants.

5.  Defendant Lon and Cindy Turner's Motion for Summary Judgment,

ORDER - 41

**Ct. Rec. 96**, filed July 25, 2008, is **DENIED in part** and **GRANTED in part** as set forth above.   All 42 U.S.C. §1983 claims, except the First Amendment Free Speech claim, remain against Defendant Lon Turner and Cindy Turner.  The Washington State privacy claim, and Plaintiff White's assault/battery claim also survives summary judgment against Defendant Turners.

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 31st day of October, 2008.

                                 *s/Lonny R. Suko*
                      _____
                            LONNY R. SUKO
                      UNITED STATES DISTRICT JUDGE

ORDER – 42